**Damon L. GUTHRIE, Appellant,**

v.

**REPUBLIC NATIONAL LIFE INSURANCE COMPANY,**
**Appellee.**

No. 01–84–276–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 21, 1984.
Rehearing Denied Dec. 20, 1984.

Russell G. Burwell, Simpson & Burwell, Texas City, for appellant.

Wade Williams, Mills, Shirley, McMicken & Eckel, Galveston, for appellee.

Before BULLOCK, BASS and DUGGAN, JJ.

## OPINION

BULLOCK, Justice.

Damon Guthrie appeals from a trial court judgment rendered on a jury verdict, awarding him nothing from the appellee for alleged violations of the Tex.Ins.Code Ann. art. 21.01 *et seq.* (Vernon 1981). We affirm.

In late 1977, the appellant's employer, Seabrook Shipyards, became dissatisfied with its Blue Cross/Blue Shield group health insurance policy, and sought another insurance carrier. Seabrook came into contact with John Cronin, an independent insurance agent who solicited policies for several insurance companies, including the appellee. Seabrook's business manager testified that she told Mr. Cronin that Seabrook wanted an insurance policy identical to the Blue Cross/Blue Shield policy, especially regarding coverage for previously existing conditions. The appellant contended that the Blue Cross/Blue Shield policy did not limit such coverage. Mr. Cronin presented a proposal for insurance prepared by the appellee; this proposal was silent regarding pre-existing conditions limitations. Apparently relying on Mr. Cronin's representations that the appellee would cover any previously existing conditions completely, Seabrook applied for insurance with the appellee. Seabrook never dealt directly with the appellee prior to this resultant dispute; all contacts regarding the policy were with Mr. Cronin.

The appellee prepared a policy consistent with the proposal, and Cronin presented it to Seabrook. Seabrook accepted this policy, which originally had a limitation of $1,000.00 for previously existing conditions.

A letter that accompanied the policy, and that all parties agree became part of the policy, raised this limitation to $10,000.00 for those employees whom Seabrook had covered under Blue Cross/Blue Shield. There is no evidence in the record that Seabrook challenged this coverage.

The appellant's wife incurred medical bills of approximately $21,000.00 before the date that the appellee's policy became effective. The appellee paid $10,000.00 of these bills, and denied the remainder of the claim.

The appellant never sued Mr. Cronin or joined him in this action, alleging instead only that the appellee was liable for Cronin's misrepresentations under the provisions of Tex.Ins.Code Ann. art. 21.21 (Vernon 1981) and Texas State Board of Insurance Regulation No. 18663. The jury found that Mr. Cronin had misrepresented the policy but that the appellee had not, and the trial court then rendered judgment for the appellee.

The appellant presents four points of error, comprising three general arguments:

That the trial court improperly refused to attribute Cronin's misrepresentations to the appellee, as statutory and common law require, and improperly refused to submit a special issue regarding agency to the jury (Points of Error 1, 2);

That the evidence is factually insufficient to support the jury's finding that the appellee made no misrepresentations to Seabrook (Point of Error 3); and

That the trial court improperly found the insurance policy to be unambiguous (Point of Error 4).

The appellant offered testimony at trial that, he claims, established Cronin as either an employee of the appellee or an agent acting with actual or apparent authority to bind the appellee. The appellant contends that specific statutory and regulatory provisions required the trial court to attribute Cronin's misrepresentations to the appellee. Alternatively, the appellant argues that the trial court should have submitted a special issue regarding agency to the jury.

The appellee claims that the Insurance Code specifically exempts it from any liability for Cronin's misrepresentations, because this policy was a life insurance policy, or that the statutory provisions that the appellant relies on are not applicable in the instant case. The appellee also contends that the evidence failed to demonstrate a factual dispute upon which to justify or require the submission of the special issue.

■ In order to evaluate the parties' claims properly, we first turn to the specific statutes and common law doctrines involved.

Tex.Ins.Code Ann. art. 21.04 (Vernon 1981) states:

Any person who shall solicit an application for insurance upon the life of another shall in any controversy between the assured and his beneficiary and the company issuing any policy upon such application be regarded as the agent of the company, and not the agent of the assured, but such agent shall not have the power to waive, change or alter any of the terms or conditions of the application or policy.

Other statutory and regulatory provisions are also pertinent to this dispute. Article 21.21, sec. 3 prohibits deceptive trade practices in the insurance industry. Article 21.21, sec. 4(1) defines deceptive trade practices to include the misrepresentation of policy terms. Article 21.21, sec. 8 grants a private cause of action to an individual who is the victim of a deceptive trade practice. Finally, Texas State Board of Insurance Regulation No. 18663 also prohibits deceptive trade practices, including misrepresentations, in the solicitation of insurance policies.

[A] soliciting agent of an insurance company has no power or authority to make a contract on behalf of the company or to waive the terms of the policy.

*International Security Life Insurance Co. v. Finck*, 496 S.W.2d 544, 546 (Tex. 1973). A soliciting agent, whose authority is limited to receiving and forwarding applications for insurance, cannot bind the in-

surer for his misrepresentations. *Dugan v. General Accident Fire & Life Assurance Corp.*, 421 S.W.2d 717, 719 (Tex.Civ. App.—Houston [14th Dist.] 1967, writ ref'd n.r.e.). It is clear, therefore, that the common law in this state does not permit a soliciting agent to bind the insurance carrier by his actions.

■ Absent actual authority, the insurance agent can bind the insurer only if the agent had apparent authority to act for the carrier.

> The rights of the parties to a contract of insurance are to be determined primarily with a view to the agent's *apparent authority*, unrestricted by the instructions of the principal which are not shown to have been known by or communicated to the insured [emphasis in the original].

*Employers Casualty Co. v. Winslow*, 356 S.W.2d 160, 167–168 (Tex.Civ.App.—El Paso 1962, writ ref'd n.r.e.).

■ In order for an insurance agent to have the necessary apparent authority, the carrier must confer that apparent authority by committing actions that, either intentionally or negligently, would induce a third person to believe the agent to have the authority he claims to have. *Brachett v. Universal Life Insurance Co.*, 488 S.W.2d 584, 586 (Tex.Civ.App.—Beaumont 1972, no writ).

■ One determines apparent authority by looking to the acts of the principal, the appellee herein, to see if those acts would lead a reasonably prudent person using diligence and discretion to suppose that the agent had the authority he purported to exercise. *Biggs v. United States Fire Insurance Co.*, 611 S.W.2d 624, 629 (Tex.1981). One should look only at the acts of the principal; representations made by the agent of his authority have no effect. *Southwest Title Insurance Co. v. Northland Building Corp.*, 552 S.W.2d 425, 428 (Tex.1977). Also, the principal must either have affirmatively held the agent out as possessing the authority or must have knowingly and voluntarily permitted the agent to act in an unauthorized

manner. *Douglass v. Panama, Inc.*, 504 S.W.2d 776, 778–779 (Tex.1974).

■ Furthermore, although an insurance agent acts for the carrier in delivering the policy and in collecting the premium, he acts for the insured, the appellant in the instant case, in making the application for insurance and in processing the policy. *Don Chapman Motor Sales Inc. v. National Savings and Insurance Co.*, 626 S.W.2d 592, 597 (Tex.App.—Austin 1981, writ ref'd n.r.e.).

Tex.Rule Civ.P. 277 provides in pertinent part:

> In all jury cases the court may submit said cause upon special issues without request of either party, and, upon request of either party, shall submit the cause upon special issues controlling the disposition of the case that are raised by the written pleadings and the evidence in the case, except that, for good cause subject to review or on agreement of the parties, the court may submit the same on a general charge.

■ A special issue is unnecessary when the evidence conclusively establishes facts in question. *T.A. Manning & Sons, Inc. v. Ken-Tex Oil Corp.*, 418 S.W.2d 324, 326 (Tex.Civ.App.—Austin 1967, writ ref'd n.r. e.); *Employers Casualty Co. v. Winslow*, 356 S.W.2d at 170.

With these concepts in mind, we now consider the parties' arguments on this point of error.

■ We agree with the appellant that art. 21.04 of the Insurance Code does not apply here. The policy for which Seabrook negotiated was clearly a group health insurance policy with incidental life benefits; thus, art. 21.04 does not release the appellee from any liability for Cronin's misrepresentations.

■ The evidence establishes, as a matter of law, that Cronin was merely a soliciting agent, and thus had no actual authority to bind the appellee. Although various individuals referred to Cronin as a "writer," "broker," and "independent agent," the context of the record conclusively establish-

es that Cronin was merely an independent soliciting agent representing several insurance companies. Thus, the only statutory question is whether art. 21.21 allows us to attribute liability for Cronin's misrepresentations of this policy to the appellee.

We held that art. 21.21 does not permit attribution of liability in this case. We note that art. 21.21 does apply to this dispute, because the jury found that Cronin misrepresented the policy to Seabrook, and that misrepresentation constituted a deceptive trade practice under this provision of the Insurance Code. Nothing in art. 21.21, however, expressly allows us to impute Cronin's misconduct to the appellee insurance carrier. Art. 21.21 indicates to us that by itself it makes only Cronin liable for his misrepresentations.

The appellant suggests that judicial interpretation of art. 21.21 permits us to attribute liability to the appellee, relying on *Royal Globe Insurance Co. v. Bar Consultants, Inc.*, 577 S.W.2d 688 (Tex.1979). We disagree with this argument. We conclude that under the authority of *Royal Globe*, art. 21.21 allows attribution to a carrier only for violations incurred by local recording agents, and not by soliciting agents. There are at least three reasons why we adopt this interpretation of *Royal Globe*.

First, it is clear from a careful reading of *Royal Globe* that the agent in that case was a local recording agent. The Texas Supreme Court went into detail over the broader extent of that type of agent's authority before attributing liability to the insurance carrier for that local recording agent's misrepresentations. In doing so, the Supreme Court noted that the local recording agent's name was on the insurance agency, that the agent signed the policy for the insurance carrier, and that the carrier did not challenge his authority to do so. The Supreme Court made it clear that a local recording agent has considerably more power and authority in insurance transactions than a soliciting agent. *Royal Globe Insurance Co. v. Bar Consultants, Inc.*, 577 S.W.2d at 692–693.

Second, the Supreme Court expressly noted the difference between a local recording agent and a soliciting agent, stating that a soliciting agent's authority "is clearly much more limited than the authority of a local recording agent authorized to sign and execute insurance policies." *Royal Globe Insurance Co. v. Bar Consultants, Inc.*, 577 S.W.2d at 693. Nothing in the express language of *Royal Globe* authorizes us to attribute a soliciting agent's misrepresentations to the insurance carrier, and we believe that, had the Supreme Court intended *Royal Globe* to apply art. 21.21 implicitly against all types of insurance agents, it would not have placed such emphasis on the difference between a local recording agent and a soliciting agent.

Finally, many other courts have applied this standard, imputing liability for the actions of a local recording agent but declining to impute that liability when a soliciting agent made those misrepresentations. *See, e.g. American National Life Insurance Company of Texas v. Montgomery*, 640 S.W.2d 346 (Tex.App.—Beaumont 1982, writ ref'd n.r.e.).

The appellant asserts in his brief that *Tidelands Life Insurance Company v. Harris*, 675 S.W.2d 224 (Tex.App.—Corpus Christi 1984) is dispositive in his favor of the instant case. We do not agree with the appellant that *Tidelands* imputes liability to the appellee under art. 21.21.

Although the slip opinion in *Tidelands* does not describe the relationship between the insurance agent and the insured with as much detail as the complete statement of facts in our case, our reading of *Tidelands* indicates that, in that case, the insurance agent was more than a mere independent soliciting agent, and apparently was an employee of the insurance company with considerable authority in the negotiation of insurance policies. The Corpus Christi Court of Appeals remarked in the first page of its opinion that the insurance agent in their case was "an agent for Tidelands Life Insurance Company," and the trial court in *Tidelands* "found that at the time the policy was sold [the agent] was an

agent of Tidelands with actual, apparent and implied authority to represent the terms of the policy." *Id.* at 225.

Thus, in *Tidelands*, we have an affirmative determination by the trial court that the insurance agent was a direct representative of the insurance company, with all the authority necessary to transact business for the insurance company, and therefore able to bind the insurance company for his wrongful conduct. The jury in the instant case, having found that Cronin misrepresented the policy to the appellant but that the appellee had no involvement in that misrepresentation, implicitly found that Cronin was only an independent soliciting agent with no actual or apparent authority that would allow us to attribute liability for his misconduct to the appellee. The record supports such a determination, and contains nothing that leads us to conclude that Cronin had any authority to act directly for the appellee. We therefore hold that Cronin's status as mere independent soliciting agent is not sufficient to create liability on the part of the appellee under Tex.Ins.Code Ann. arts. 21.02, 21.21 (Vernon 1981).

The common law is clear, indicated by the authorities discussed *supra*, that a soliciting agent is without actual authority to bind the insurance company by his actions. The evidence does not establish that Cronin had the apparent authority necessary to bind the appellee for his misrepresentations, for there is nothing in the record suggesting either that the appellee held Cronin out to Seabrook as having such authority, or that the appellee failed to exercise diligence in order to prevent Cronin from becoming "clothed with the indicia of authority." Also, no evidence establishes the proposition that the appellee ratified any misrepresentations by Cronin; indeed, we note that Seabrook never dealt directly with the appellee until after the appellee denied the additional $11,000.00 in claims by the appellant. We therefore hold that there is under the common law no basis for binding the appellee by Cronin's misrepresentations.

Since compelling evidence establishes Cronin's status as an independent soliciting agent with no statutory, actual, or apparent authority to bind the appellee, and since no competent evidence exists in the record to rebut this status, we hold that the evidence conclusively established a disputed fact, and that a special issue on the question of agency was unnecessary.

We overrule the appellant's first and second points of error.

■ The appellant next argues that the evidence shows that the appellee was active in misrepresenting this policy to Seabrook; thus, the appellant claims, the weight of the evidence does not support the jury's answer to the special issue regarding misrepresentation by the appellee. The appellee argues that the only evidence in the record is of wrongful conduct by Cronin, that Cronin was at that stage of the transaction an agent for Seabrook and for the appellant, and that therefore the jury's answer was correct. We agree with the appellee.

In evaluating a factual sufficiency challenge, we should consider the weight of the record as a whole. *In re Kings Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

■ The only evidence in the record that would contradict a finding that Cronin was an independent soliciting agent and not a de facto employee of the appellee is the testimony of Seabrook's business manager, who testified at trial that she believed, when dealing with Cronin, that Cronin was acting directly for the appellee. The reason for her belief is not clear in the record, and this testimony alone is insufficient to disturb other uncontradicted testimony that Cronin was not an employee of Republic National Life Insurance Company.

The evidence supports only the proposition that there was no contact between either Seabrook or the appellant and the appellee until *after* the appellee denied $11,000.00 of the claims. The appellee did issue a different policy from the one that Seabrook had desired, but there is no evi-

dence supporting the proposition that the appellee at any time dealt unfairly with any representatives of Seabrook or the appellant in issuing this policy. Additionally, Seabrook's business manager testified that, when she received and read over the policy, she noticed the limitations on coverage for previously existing condition, but did not challenge them.

Therefore, we conclude that the weight of the record supports the jury's finding that the appellee did not make any misrepresentations either to Seabrook or to the appellant, and we overrule the appellant's third point of error.

 The appellant argues that, because the policy limited coverage for previously existing conditions to $1,000.00, while the appended letter raised that limitation to $10,000.00 for specified employees, and because neither of these coverage limits comported with the $250,000.00 that the appellant claims that the Blue Cross/Blue Shield policy provided, the contract was ambiguous, and the trial court therefore should have submitted its interpretation to the jury.

[A] contract is found to be ambiguous if its meaning is uncertain and doubtful, or if it is subject to more than one reasonable meaning and such conflict may not be resolved by rules of interpretation. *Bellefonte Underwriters Insurance Co. v. Brown,* 663 S.W.2d 562, 577 (Tex.App.—Houston [14th Dist.] 1983, no writ); *See also O'Shea v. Coronado Transmission Co.,* 656 S.W.2d 557, 561 (Tex.App.—Corpus Christi 1983, no writ); *Vermillion Construction Co. v. Fidelity and Deposit Company of Maryland,* 526 S.W.2d 744, 748 (Tex.Civ.App.—Corpus Christi 1975, no writ); *McCoy v. Dolph Construction Co.,* 203 S.W.2d 661, 662 (Tex.Civ.App.—Waco 1947, no writ).

This policy was not ambiguous. It expressly limited coverage for previously existing conditions to $1,000.00; standing alone, this would have been the sole limitation for coverage of such claims. The appended letter became part of this insurance policy, and the only question for us to determine is whether that letter created the possibility of multiple or inconsistent interpretations of this policy. We conclude that it did not; on the contrary, the letter unambiguously raised the coverage of previously existing conditions to $10,000.00 for those employees who had been covered under the old Blue Cross/Blue Shield policy.

The appellant's only claim for the proposition that the policy was ambiguous is that these provisions did not comport with what Seabrook desired; the appellant argues that, because there was any limitation of previously existing conditions at all, the policy must therefore be ambiguous. We find this argument to be without merit and overrule the appellant's fourth point of error.

We affirm the judgment of the trial court.