SHANDEE CORPORATION, Appellant,

v.

KEMPER GROUP, Appellee.

Nos. C14–92–00126–CV, C14–92–00480–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

March 24, 1994.

Rehearing Denied May 5, 1994.

v. *State Bar of Tex.*, 775 S.W.2d 712, 715–17   (Tex.App.—San Antonio 1989, writ denied).

Richard N. Countiss, George R. Neely, Houston, for appellant.

Howard R. King, Houston, for appellee.

Before ROBERTSON, CANNON and BOWERS, JJ.

## OPINION ON MOTION FOR REHEARING

ROBERTSON, Justice.

Shandee Corporation appeals from a judgment in Shandee's favor on its claim of breach of contract against Kemper Group. Appellant raises eleven points of error challenging the trial court's grant of judgment notwithstanding the verdict on Shandee's claims of fraud, and challenging the trial court's award of prejudgment interest and its refusal to award attorney's fees. Kemper brings three cross-points. In our original opinion of September 30, 1993, we affirmed in part and reversed and remanded in part. On motion for rehearing by Kemper, we withdraw our opinion of September 30, 1993 and substitute the following opinion.

Appellant began purchasing insurance coverage from Kemper in 1982 through an agent named Howard Johnston. Appellant's general liability policy was to expire in July 1986. Johnston told appellant that this poli-

cy and other policies would be renewed and merged into a single TMP (Texas Multiple Perils) policy. Internal Kemper documents confirm that Johnston was arranging for this change in policies. Johnston maintained that appellant was covered and he issued certificates of insurance, required for state-wide bid contracts, reflecting the existence of a general liability policy with an effective date of July 20, 1986 through July 20, 1987. During the fall of 1986, appellant experienced several losses and submitted claims to Kemper. Kemper paid these claims. On approximately November 13, 1986, appellant received a billing and statement of account from Kemper that said appellant's general liability policy had not been renewed. This was the first notice to appellant that the policy had not been renewed. On December 10, 1986, Kemper wrote to appellant acknowledging their discovery that the policy had not been renewed. This letter and two that followed it requested reimbursement for the amounts paid in settlement of the claims paid after the non-renewal date.

Appellant filed suit and the case went to the jury on fraud and breach of contract theories. The jury found fraud in connection with the general liability policy by Kemper and Johnston and assessed $51,699.35 in actual damages against each defendant. The jury also found that Kemper and Johnston had acted with conscious disregard and assessed $750,000.00 in exemplary damages against Kemper and $1,000,000.00 in exemplary damages against Johnston. The jury also found that a contract for general liability coverage existed for the period of July 1986 to July 1987 and that this contract had been breached by Kemper. The jury assessed $51,699.35 in actual damages and found $68,000.00 as a reasonable attorney's fee.

Kemper then filed a motion for judgment notwithstanding the verdict, which the trial court granted. The trial court disregarded the jury findings of fraud by Kemper, disregarded the jury findings of fraud as to the general liability policy by Johnston, reduced the award of exemplary damages assessed against Johnston for the fraud liability, and disregarded the finding of attorney's fees for breach of contract. Appellant filed a motion

to vacate and a motion for new trial. The trial court then vacated the judgment against Johnston, severed the cause against Johnston and required appellant to tender a remittitur or a new trial would be ordered. Appellant filed a remittitur and the trial court signed a judgment awarding appellant $8,000.00 in actual damages and $80,000.00 in exemplary damages against Johnston. We have consolidated the two causes for purposes of this appeal.

In points of error one through three, appellant challenges the trial court's grant of Kemper Group's motion for judgment n.o.v. disregarding the jury's answers to questions one through four. The jury found that Kemper committed fraud regarding a general liability policy or Texas Multi-peril policy and that this fraud was a proximate cause of damages to appellant. The jury awarded $51,699.35 in actual damages and $750,000.00 in exemplary damages. The trial court found "no evidence of probative force" to sustain the jury's answers to questions one through four and therefore, disregarded them.

In reviewing whether the grant of judgment n.o.v. was proper, we must view the evidence in favor of the jury's findings and determine that there is no evidence supporting those findings. *See Exxon Corp. v. Quinn,* 726 S.W.2d 17, 19 (Tex.1987). If there is more than a scintilla of evidence supporting the jury's findings, we must reverse the judgment n.o.v. *Navarette v. Temple Indep. School Dist.,* 706 S.W.2d 308, 309 (Tex.1986).

Appellant argues that the jury's fraud findings are supported by evidence of Johnston's fraud while he was acting as Kemper's agent and by evidence of Kemper's direct participation in the fraud. Appellant first contends that Kemper's payment of claims in the Fall of 1986 and their subsequent refusal to pay additional claims because of lack of coverage constituted fraud.

Although Kemper's payment of claims in the Fall of 1986 could constitute a material misrepresentation that coverage existed, appellant was not damaged by this misrepresentation. Kemper paid the claims

and later requested reimbursement of the amounts paid, but appellant never reimbursed Kemper for these sums. Furthermore, Kemper's notice to appellant that the general liability policy had not been renewed on July 20, 1986 and Kemper's refusal to pay additional claims cannot constitute material misrepresentations because they are true. Thus, we find no evidence of any fraudulent acts committed directly by Kemper.

We now turn to whether there was any evidence of fraud committed by Johnston, as Kemper's agent. The jury was instructed that the acts or omissions of an agent, acting within the scope of his actual or apparent authority, are considered the acts or omissions of that party. The trial court further instructed the jury not to attribute Johnston's conduct to Kemper unless he had actual or apparent authority from Kemper to make a particular representation, quote or statement about coverage. As to apparent authority, the jury was given the following instruction:

> "Apparent authority" is determined solely from the acts of Kemper Group. The representations of Howard Johnston concerning this authority have no effect and cannot be considered to determine apparent authority. The acts of Kemper Group must lead a reasonably prudent person using diligence and discretion to suppose that Howard Johnston had the authority that he purported to exercise. For you to find apparent authority, Kemper Group must have affirmatively held out Howard Johnston as possessing the authority; or Kemper Group must have knowingly and voluntarily permitted Howard Johnston to act in an unauthorized manner.

Appellant does not argue on appeal that Johnston had actual or apparent authority. Instead, appellant cites the Texas Insurance Code for the proposition that Johnston is a local recording agent and that Johnston's actions are imputed to Kemper.

The Texas Insurance Code categorizes insurance agents into two classes: local recording agents and soliciting agents. A local recording agent is authorized by an insurance company to solicit business, sign and deliver insurance policies, bind insurance

risks, collect premiums, and maintain an office and record of such business. *See* TEX. INS.CODE ANN. art. 21.14, § 1 (Vernon Supp. 1993). Appellant argues that these definitions purport to impute liability to insurance companies for the acts of their agents.

■ Appellee, on the other hand, maintains that appellant is bound by the questions and instructions actually submitted to the jury. As mentioned earlier, the charge contained no questions regarding agency. Instead, the charge instructed the jury that the acts of Johnston could be attributed to Kemper only if Johnston had actual or apparent authority. The charge also defined apparent authority. No issue or instruction regarding Johnston's status as a local recording agent was requested and appellant did not make any objections to the charge. Under Rule 274, any complaint about jury questions or instructions are waived unless included in objections to the charge. TEX.R.CIV.P. 274. Because appellant did not object to the instructions on the ground that they did not include a definition of the statutory agency requirements, appellant has not preserved error for complaint on appeal.

■ We turn next to the question whether there is any evidence that Johnston had authority from Kemper to make particular representations, quotes, or statements about coverage to appellant. To determine whether Johnston had apparent authority, we look to the acts of the principal, Kemper, "to see if those acts would lead a reasonably prudent person using diligence and discretion to suppose that the agent had the authority he purported to exercise." *Guthrie v. Republic Nat'l Ins. Co.*, 682 S.W.2d 634, 637 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). Representations of the agent regarding his authority have no effect on this determination. *Id.* The principal must have held out the agent as possessing the authority or the principal must have "knowingly and voluntarily permitted the agent to act in an unauthorized manner." *Id.* According to recent supreme court precedent, an insurance company will not be liable unless its agent has the authority to make representation outside the scope of the written policy.

*Celtic Life Ins. Co. v. Coats,* 36 Tex.Sup.Ct.J. 1259, 1261 (September 10, 1993).

■ Appellant did not communicate with Kemper; instead, appellant communicated with Johnston, Kemper's agent. Thus, few acts by Kemper are found in the evidence. Appellant had purchased insurance coverage from Kemper through Johnston, as Kemper's agent, since 1982. There was an internal memo by Kemper indicating that Johnston had authority to secure a TMP policy for appellant. Kemper paid five claims submitted by appellant before Kemper discovered that appellant's coverage had not been renewed. This evidence does not indicate that Kemper knowingly and voluntarily permitted Johnston to act in an unauthorized manner. Thus, the evidence does not support a finding that Johnston had apparent authority to make misrepresentations about coverage. We overrule points of error one through three.

■ In points of error six through nine, appellant challenges the trial court's refusal to render judgment on the jury's answers to questions five through eight. In response to the jury questions regarding Johnston, the jury found him liable for fraud and assessed actual damages of $59,699.35 ($51,699.35 for the TMP policy and $8,000.00 for the railroad protective policy) and $1,000,000.00 in exemplary damages. The trial court held there was sufficient evidence to sustain the jury's verdict as to fraud on the railroad protective policy only. Thus, the trial court granted judgment in favor of appellant awarding only $8,000.00 and reducing the exemplary damages to $80,000.00. Subsequently, the trial court granted appellant's motion to vacate the judgment and motion for new trial as to Johnston and severed appellant's claims against Johnston. Following the filing of a remittitur by appellant, the trial court entered judgment against Johnston for $8,000.00 in actual damages and $80,000.00 in exemplary damages.

Appellant claims that sufficient evidence supports the jury's finding of fraud by Johnston in the handling of the TMP policy as well as the railroad protective liability policy. Appellant further contends the trial court erred in reducing the exemplary damages to $80,000.00. Finally, appellant claims the trial court erred by ruling on its own motion that it would grant Johnston a new trial unless appellant agreed to a $920,000.00 remittitur. We turn first to the evidence supporting the liability finding against Johnston.

The evidence shows that Johnston represented to appellant that their general liability policy would be renewed as a TMP policy. Furthermore, the evidence shows that Johnston advised Kemper not to renew appellant's general liability policy because appellant would be applying for a TMP. In a note, dated May 20, 1986, Jackie McLendon, a senior underwriter for Kemper, mentioned Kemper's willingness to write a TMP for appellant in 1986. In a letter, dated July 2, 1986, McLendon wrote Johnston that Kemper was "processing as a non-renewal per [Johnston's] request [of] 5/14, since this coverage will be renewed on a TMP." Kemper did not issue a TMP policy because they claimed they never received a completed application from Johnston, who was responsible for making the applications on behalf of appellant. This is sufficient evidence that Johnston made a material misrepresentation that was false when made and that Johnston intended appellant to rely on. There is evidence appellant did rely on Johnston's representations and they did not seek other coverage. Finally, appellant suffered damage in that it paid approximately $37,000.00 in claims and paid more than $20,000.00 in additional premiums to obtain coverage similar to that previously provided by Kemper. Thus, we find sufficient evidence to support the jury's findings regarding the TMP policy and the trial court erred in disregarding them. We sustain points of error six and seven to the extent they relate to the actual damages findings.

■ We turn now to appellant's claim that the trial court erred in reducing the jury's award of exemplary damages from $1,000,000.00 to $80,000.00. Texas law requires that exemplary damage awards be reasonably proportioned to actual damages. *Alamo Nat'l Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex.1981). There is no set ratio between the amount of actual damages and the

amount of exemplary damages. *Id.* This determination depends upon the facts of each case. *Id.* To determine whether the award of exemplary damages is reasonable, the Texas Supreme Court has set forth five factors to consider:

(1) the nature of the wrong,

(2) the character of the conduct involved,

(3) the degree of culpability of the wrong-doer,

(4) the situation and sensibilities of the parties concerned, and

(5) the extent to which such conduct offends a public sense of justice and propriety.

*Id.* The trial court submitted these factors, and two others, to the jury. The two factors not taken from the *Alamo* case but included in the jury instructions were: (1) the frequency of the wrongs committed, and (2) the size of an award needed to deter similar wrongs in the future.

■ Considering these factors and the evidence in this case, we find that the jury's award of $1,000,000.00 was not excessive or unreasonable. Insurance consumers depend upon the representations of agents regarding coverage and when insurance agents fail to live up to their promises, the consumers can suffer catastrophic losses. Johnston's representations to appellant that he was obtaining coverage and his subsequent failure to submit appellant's application and obtain coverage constitutes outrageous conduct that could have caused far more damage to appellant. Thus, we hold that the trial court erred in reducing the exemplary damages assessed against Johnston. We sustain point of error eight.

Appellant next contends the trial court erred by ruling, on its own motion, that it would grant Johnston a new trial unless appellant agreed to a $920,000.00 remittitur. Because we have ruled the trial court erred in rejecting the jury's findings as to actual damages assessed against Johnston and that the court erred in reducing the exemplary damage award against Johnston, we find it unnecessary to address point of error nine.

In points of error four and five, appellant challenges the trial court's ruling with re-spect to attorney's fees. Appellant claims that, even if we overrule its points of error regarding fraud, we must resolve the question of attorney's fees because they are recoverable for breach of contract. In cross-point of error one, appellee contends there was no evidence Kemper breached a contract and therefore, the request for attorney's fees was properly denied.

We turn first to Kemper's cross-claim that there was no evidence supporting the jury's finding of breach of contract. In response to question 9, the jury found the existence of a general liability policy for the period of July 1986 to July 1987. The jury found no contract for a TMP or railroad protective policies for the same time period. In response to question 10, the jury found that Kemper breached this contract for a general liability policy and assessed damages of $51,699.35. Although Kemper does not specifically contest the jury finding that there was a contract for a general liability policy for the time period of July 1986 to July 1987, Kemper's evidentiary challenge to the breach of contract finding is broad enough to encompass the finding of a contract.

■ When a party claims no evidence to support a finding, we may consider only the evidence and inferences tending to support the finding, disregarding all contrary evidence and inferences. *Best v. Ryan Auto Group, Inc.*, 786 S.W.2d 670, 671 (Tex.1990). If there is any evidence of probative force to support the finding, we must overrule the point and uphold the finding. *Southern States Transp., Inc. v. State*, 774 S.W.2d 639, 640 (Tex.1989).

■ The evidence showed that, although Johnston misrepresented the existence of a policy, appellant's general liability policy was not renewed in July 1986 and appellant paid no premium. Thus, no insurance contract existed after July 1986. Subsequent to this date, appellant submitted claims to Kemper, which Kemper paid, until it discovered and sent appellant notice that the policy had not been renewed in July of 1986. At this time, Kemper requested reimbursement from appellant for the claims Kemper had erroneous-

ly paid. Appellant thereafter submitted no other claims to Kemper.

We find no evidence supporting the jury's finding of a general liability policy effective from July 1986 through July 1987. Absent a contract, there could be no breach and thus, no evidence supports the jury's finding of breach. We sustain Kemper's first cross-point. We overrule appellant's points of error four and five.

In points of error ten and eleven, appellant claims the trial court erred in awarding pre-judgment interest without ordering that this interest be compounded daily and by refusing to allow the interest to run continuously to the date of judgment. Appellant also challenges the trial court's ruling that pre-judgment interest should be tolled as to Kemper because of unexcused delay. In its third cross-point, Kemper claims the trial court improperly awarded prejudgment interest because the sum payable under the contract was ascertainable and because there was no finding of when the sum payable became due. Because appellant obtained a breach of contract finding against Kemper, it argues that, under *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549 (Tex. 1985), the trial court should have included in the judgment that the actual damage award would be compounded annually. We need not address appellant's points of error because of our rulings regarding the liability findings against Kemper. We have held that no evidence supports the breach of contract finding and this is the only basis upon which appellant challenges the lack of annual compounding of the actual damage award. We need not address Kemper's third cross-point challenging the award of prejudgment interest since we have overturned all liability findings against Kemper.

In its second cross-point, Kemper claims the trial court erred in admitting appellant's exhibit 35 as evidence of attorney's fees because appellant failed to produce these documents within 30 days of trial in response to appropriate discovery requests. Because we have held that there was no evidence of breach of contract and thus, there is no finding upon which attorney fees may be recovered, we need not address this point of error.

We reverse and render judgment in favor of Kemper on the cause of action for breach of contract. Because we affirm the remainder of the judgment as it concerns Kemper, we modify the judgment to reflect that appellant take nothing from Kemper. We further reverse the portion of the judgment that assesses damages against Johnston only as to fraud on the railroad protective policy and not as to fraud on the general liability policy. We remand this portion of the judgment to the trial court for the entry of additional damages and the calculation of prejudgment interest. Finally, we reverse and render judgment in favor of appellant and against Johnston for the $1 million in exemplary damages awarded by the jury.

BOWERS, J., not participating.