Issued on April 10, 2003



     






In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00441-CV




WAYNE DUDDLESTEN, INC., Appellant

V.

HIGHLAND INSURANCE CO., FOR ITSELF AND AS ASSIGNEE OF
CLAIMS OF ABERDEEN INSURANCE CO.; AND ABERDEEN
INSURANCE CO., Appellees




On Appeal from the 280th District Court
Harris County, Texas
Trial Court Cause No. 00-15826




O P I N I O N

          Appellant, Wayne Duddlesten Inc. (Duddlesten), sued appellees, Highlands
Insurance Co. (Highlands), and Aberdeen Insurance Company (Aberdeen), for
violations of article 21.21 of the Texas Insurance Code, negligence, violations of the
Deceptive Trade Practices Act, fraudulent inducement, breach of fiduciary duty,
breach of the duty of good faith and fair dealing, breach of contract, and for a
declaratory judgment. Highlands counterclaimed for breach of contract, reformation,
fraud in the inducement, breach of express warranty, estoppel, declaratory judgment,
and bad faith DTPA and insurance code claims.
          The trial court granted summary judgment against appellant on its breach of
contract, DTPA, and insurance code claims, granted appellees’ motion for judgment
on the pleadings as to appellant’s breach of fiduciary duty claim, and granted
appellees’ special exception to appellant’s negligence claim. The trial court granted
summary judgment for appellant as to appellees’ fraud in the inducement, breach of
express warranty, and estoppel claims. The case proceeded to a non-jury trial solely
on appellees’ counterclaims for breach of contract, reformation, declaratory judgment,
and bad faith DTPA and insurance code claims. The trial court ordered that appellant
take nothing, and that Highlands should have judgment for breach of contract,
attorney’s fees, pre-judgment interest, post-judgment interest, and costs. The trial
court awarded to Highlands $336,941.59 in actual damages, $47,635.10 in pre-judgment interest, and $131,550.25 in attorney’s fees. 
          In three issues, which we will separate into six issues in this opinion, appellant
argues that the trial court erred in (1) granting summary judgment for appellee on
appellant’s breach of contract claim; (2) granting summary judgment for appellee on
appellant’s DTPA and insurance code claims; (3) ruling against appellant on its
affirmative defense that the premium payment agreement was invalid; (4) ruling
against appellant on its affirmative defense that the Aberdeen policies were not valid
retroactive insurance policies; (5) granting appellees’ special exception on appellant’s
breach of fiduciary duty claim; and (6) granting appellees’ special exception to
appellant’s negligence claim.
          We affirm.
Facts
          In 1991, appellant obtained worker’s compensation insurance through
Highlands, with the policy in effect from July 1, 1991, to July 1, 1992 (policy one). 
The next two years, appellant obtained two insurance policies from Aberdeen, a
subsidiary of Highlands, with the policies in effect from July 1, 1992, to July 1, 1993
(policy two), and July 1, 1993, to July 1, 1994 (policy three), respectively.
          Highlands issued the first of the three insurance policies at issue in this case. 
As part of policy one, appellant signed and agreed to a retrospective premium
payment plan, which was labeled as a “three year plan.” Under the retrospective
premium payment plan, a standard annual premium amount would be adjusted
according to factors based on the amounts that Highlands had to pay on claims made
under the policy. Highlands timely filed the required notice of election with the State
Board of Insurance and indicated on the notice of election form that the retrospective
rating plan was for a term of three years. The notice of election form also indicated
that the retrospective rating plan would apply to policy one, but there was no
reference to any other policies. Policies two and three, issued by Aberdeen,
incorporated the premium payment plan from policy one by reference. None of the
applications for the three policies indicated that there would be a retrospective
premium payment plan in effect. 
          On March 27, 2000, appellant sued Highlands for inappropriately settling and
paying several claims that had been asserted against appellant by appellant’s
employees. Appellant later amended its petition to add Aberdeen as an additional
defendant in the suit. 
Summary Judgment
          In its first issue, appellant argues that the trial court erred in granting summary
judgment for appellee on appellant’s breach of contract claim, and in granting
appellee’s no-evidence motion for summary judgment on appellant’s DTPA and
insurance code claim. 
Standard of Review
          The standards for reviewing a motion for summary judgment are as follows:
(1) the movant for summary judgment has the burden of showing that there is no
genuine issue of material fact and that the movant is entitled to judgment as a matter
of law; (2) in deciding whether there is a disputed material fact issue precluding
summary judgment, evidence favorable to the nonmovant will be taken as true; and
(3) every reasonable inference must be indulged in favor of the nonmovant and any
doubts resolved in the nonmovant’s favor. Nixon v. Mr. Prop. Mgmt. Co., 690
S.W.2d 546, 548-49 (Tex. 1985). A defendant is entitled to summary judgment if at
least one element of each of the plaintiff’s causes of action is negated as a matter of
law. Doe v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 476-77 (Tex. 1995). 
A defendant may also prevail on a motion for summary judgment by conclusively
proving all elements of an affirmative defense as a matter of law, such that there is
no genuine issue of material fact. Cathey v. Booth, 900 S.W.2d 339, 341 (Tex. 1995)
(per curiam). 
          A no-evidence motion for summary judgment is proper when there is a
complete absence of evidence of a vital fact, or the evidence offered to prove a vital
fact is no more than a scintilla, or the evidence conclusively establishes the opposite
of the vital fact. Merrell Dow Pharmacy, Inc. v. Havner, 953 S.W.2d 706, 711 (Tex.
1997).
Breach of Contract
          Appellant claims that appellees breached the provisions of the insurance
policies that required appellees to properly investigate and adjust the claims. 
Appellees argue that, under Texas law, there is no cause of action for the negligent
handling of claims, and there is no language in the policy that gives appellant the
right to have specific input into the decision to settle, or to override appellee’s right
to settle. 
          The policy states in relevant part that:
B. WE WILL PAY
 
We will pay promptly when due the benefits required of
you by the Worker’s Compensation law.
 
C.WE WILL DEFEND
 
We have the right and duty to defend at our expense any
claim, proceeding or suit against you for benefits payable
by this insurance. We have the right to investigate and
settle these claims proceedings or suits.
 
We have no duty to defend a claim, proceeding or suit that
is not covered by this insurance.

          Appellant does not argue that appellees failed to defend it from any suits or
claims against it, but rather, appellees did not properly investigate and adjust the
claims according to its duties under the policy. We will determine appellee’s
contractual duties by looking at language of the policy itself. Kelley-Coppedge Inc.
v. Highlands Ins. Co., 980 S.W.2d 462, 464 (Tex. 1998). 
          Appellant relies on section B, above, to impose a duty on appellees to pay only
those claims against appellant that are valid, relying on the language, “will pay . . .
benefits required of you by the Worker’s Compensation law.” Appellant also relies
upon the last sentence of section C, which states that appellees have no duty to defend
a claim or proceed in a suit that is not covered by the insurance policy. Appellant
claims that this term was violated when appellees settled claims that should not have
been covered by the policy. 
          We do not agree with appellant’s interpretation of the policy. Section B states
that appellees will pay, when due, the benefits required. Section C gives appellees
the right to investigate and settle all claims, proceedings, or suits. The actions taken
by appellees pursuant to section C will determine if appellees are required to pay the
benefits discussed in section B. If appellees exercise their rights under the policy in
section C to settle a claim, then payment will be required of appellees under section
B. There is no requirement in the policy that appellees obtain the consent of appellant
when settling a claim or investigating the merits of a claim, and we are not permitted
to write such a clause into the policy. Dear v. Scottsdale Ins. Co., 947 S.W.2d 908,
913-14 (Tex. App.—Dallas 1997, pet. denied) (holding that when policy gives
absolute right to settle third-party claims, courts are not permitted to “engraft any
consent requirement onto [the] policy”), overruled on other grounds by Apex Towing
Co. v. Tolin, 41 S.W.3d 118, 122-23 (Tex. 2001).
          We will discuss later in this opinion whether appellees have extra-contractual
duties that require them to use prudence in investigating and settling claims, but we
hold that, because the policy gives appellees the “right to . . . settle these claims,
proceedings or suits,” appellees’ discretion in investigating and settling claims is not
contractually limited. Accordingly, we hold that the trial court did not err in granting
summary judgment for appellees on appellant’s breach of contract claim.
          We overrule issue one.
Claims under the DTPA and Insurance Code
          The trial court granted appellee’s no-evidence motion for summary judgment
on appellant’s DTPA and insurance code claims on the basis that there was no
evidence of any misrepresentation made by appellees, and no evidence that appellees
caused appellant to suffer damages. 
          Appellant’s insurance code claims are based upon sections 4(1), 4(2), and
4(10)(a)(iv) of article 21.21. Tex. Ins. Code Ann. art. 21.21, § 4 (Vernon Supp.
2003). Appellant argues that appellees violated section 4(1) by misrepresenting the
terms of the policy, violated section 4(2) by knowingly making misrepresentations
that only legitimate claims would be paid, and violated section 4(10)(a)(iv) by
knowingly failing to provide appellant with a reasonable explanation of the basis for
appellees’ decisions to compromise settlements of claims at issue. Generally, claims
under section 4(1) and 4(2) are based upon insurance carrier’s misrepresentations, and
distribution of false information, respectively. Tex. Ins. Code Ann. art. 21.21, §
4(1), (2). Section 4(10)(a)(iv) provides that a deceptive act includes “failing to
provide promptly to a policyholder a reasonable explanation of the basis in the policy,
in relation to the facts or applicable law, for the insurer’s denial of a claim or for the
offer of a compromise settlement of a claim.” Tex. Ins. Code Ann. art. 21.21, §
4(10)(a)(iv). 
          Appellant’s DTPA claim is based upon appellees’ alleged misrepresentations
about the standard and quality of insurance services that were to be provided,
misrepresentations about the rights and remedies that the policies conferred, and
appellees’ failure to disclose information concerning the services and benefits
offered. Tex. Bus. & Com. Code Ann. § 17.46(b) (Vernon 2002). Generally, claims
may be made under section 17.46(b)(5) for misrepresentations regarding
characteristics of goods or services, under section 17.46(b)(7) for misrepresentations
as to the quality of goods or services, and under 17.46(b)(24) for failing to disclose
information about goods or services if the failure to disclose was intended to induce
the consumer into a transaction into which the consumer would not have entered had
the information been disclosed. Tex. Bus. & Com. Code Ann. § 17.46(b). 
          Appellees’ motion for summary judgment was a traditional as well as a no-evidence motion. Appellees contended that there was no evidence of
misrepresentations, and that the testimony of Wayne Duddlesten, in his deposition,
conclusively established that appellant could not prevail on his claims under the
DTPA and insurance code. In Duddlesten’s deposition, the following dialogue took
place:
Attorney:Let me approach it this way. Is it fair to say, Mr.
Duddlesten, that you don’t have personal knowledge and
you’re not aware of anyone at your company who has
personal knowledge that either Highlands insurance
Company or Aberdeen represented that their insurance
services and benefits were of a particular standard and
quality, although they were not?
 
Duddlesten:No, I have no personal knowledge of that.
 
Attorney:And you’re not aware of anyone at your company?
 
Duddlesten:No, I’m not.
 
Attorney:And the second thing that’s on page 6, it says that
defendants represented that the insurance policies
conferred and/or involved rights, remedies, and obligations
on the part of defendants, which they now claim they did
not. You’re not aware of anyone personally or at your
company who has knowledge about any of those alleged
representations, correct?
 
Duddlesten:No. It’s the same answer as before.

Duddlesten went on to testify that he had no personal knowledge of any actions taken
by Highlands or Aberdeen in which those two companies failed to disclose
information about their goods or services. Duddlesten also testified that the sole basis
for his opinion that misrepresentations had been made was from conversations that
he had with his internal staff. 
          Appellant claims that, despite Duddlesten’s testimony, appellant produced
evidence of misrepresentations of appellees. As evidence of misrepresentations,
appellant submitted its first and second supplemental responses to Aberdeen’s first
set of interrogatories; a letter from an independent insurance agent, Jerry Sims, which
stated that Sims believed that the appellees’ adjustment calculations were correct; the
affidavit of appellant’s expert, Paul Dutcher; and the affidavit of another of
appellant’s experts, Warren Petersen.
          Appellant indicated in its answers to Aberdeen’s interrogatories that, in
essence, appellees impliedly represented that all claims paid were due under the
policy, because the policy indicated that only valid claims would be paid. We have
already held, as a matter of law, that appellees’ right to settle claims under the policy
is not contractually limited. Further, the alleged implied misrepresentations of
appellees stem from an alleged failure to comply with the terms of a contract. Such
actions may provide the basis for a breach of contract claim (which we have already
discussed), but the same conduct cannot be used to support an action under the DTPA
or the insurance code. See Crawford v. Ace Sign, Inc., 917 S.W.2d 12, 14 (Tex. 1996)
(where alleged misrepresentations resulted from failure to perform under contract,
such alleged misrepresentations were not deceptive acts under the DTPA). 
Accordingly, appellant’s answers to appellee Aberdeen’s interrogatories are not
evidence of a misrepresentation under the DTPA or insurance code.
          Appellant’s reliance on the letter of Sims, an independent insurance agent, is
based upon the premise that representations made by Sims can be imputed to
appellees. Sims stated in his letter to appellant that appellees’ adjustment calculations
were correct. Appellant claims that article 21.04 of the Insurance Code deems Sims
an agent of appellees, which would allow appellant to use Sims’s letter as evidence
of appellees’ misrepresentations. See Tex. Ins. Code Ann. art. 21.04 (Vernon Supp.
2003). Article 21.04 states the following:
Any person who solicits an application for life, accident, or health
insurance, or property or casualty insurance, shall, in any controversy
between the insured or the insured’s beneficiary and the company
issuing any policy upon such application or between the insured or the
insured’s dependents and that company, be regarded as the agent of the
company, and not the agent of the insured . . . .

Tex. Ins. Code Ann. art. 21.04.
          By its own language, article 21.04 applies only to life, accident, health,
property, or casualty insurance. Tex. Ins. Code Ann. art. 21.04; see generally
Guthrie v. Republic Nat. Ins. Co., 682 S.W.2d 634, 637 (Tex. App.—Houston [1st
Dist.] 1984, writ ref’d n.r.e) (holding that when the type of insurance procured is not
listed in article 21.04, the article does not apply). In this case, appellant purchased
worker’s compensation insurance, which is not listed in article 21.04. Our query,
then, is whether Sims had actual or apparent authority to bind appellees with his
alleged misrepresentations. Guthrie, 682 S.W.2d at 637. Apparent authority in this
case is determined by the acts of the insurer. Id. Apparent authority exists when the
insurer affirmatively holds an agent out as possessing the authority, or the insurer
knowingly and voluntarily permits the agent to act in an unauthorized manner. Id. 
It is undisputed that Sims was an independent insurance agent who was requested by
appellant to check appellees’ adjustment calculations. Appellant has shown no
evidence that Sims was acting at the direction of appellees, or that appellees held out
Sims as one with authority to speak for appellees with regard to the calculation of the
adjustments made. Accordingly, Sims’s letter to appellant cannot be used as evidence
of appellees’ misrepresentations.
          The affidavits of Dutcher and Petersen are also relied upon by appellant as
evidence of appellees’ alleged misrepresentations. Dutcher stated in his affidavit that
certain claims were paid by appellee for which appellant should not have been
responsible. Petersen stated in his affidavit that appellees incorrectly calculated the
premium charged to appellants. While both of those affidavits lend themselves to
appellant’s theory that some claims were paid for which appellant should not have
been responsible, they are not evidence of misrepresentations by appellees. See
Crawford, 917 S.W.2d at 14 (evidence of breach of contract, without more, is not
evidence of actionable misrepresentation under DTPA). Accordingly, we hold that
the affidavits of Dutcher and Petersen are not evidence of appellees’ alleged
misrepresentations.
          Upon our review of the record, we hold that appellant produced no evidence
of a deceptive act or misrepresentation to support its claims under the DTPA and
insurance code. Accordingly, the trial court did not err in granting summary
judgment for appellees on appellant’s DTPA and insurance code claims.
          We overrule issue two.
Validity of Premium Payment Agreement
          In its third issue, appellant argues that the trial court erred when it ruled against
appellant’s affirmative defense that the agreement to pay premiums was void and
unenforceable under article 5.57 of the Texas Insurance Code because there was no
evidence, or insufficient evidence, to support such a ruling. See Tex. Ins. Code Ann.
art. 5.57 (Vernon 1981). Appellant contends that the agreements to pay premiums
were void because, although the retrospective premium payment plan was included
in the policies, it was not sufficiently identified in the applications for the policies. 
          In a no-evidence, legal sufficiency review, we must consider only the evidence
and inferences from evidence that supports the trial court’s findings and must
disregard all evidence and inferences to the contrary. Heldenfels Bros. Inc. v. City of
Corpus Christi, 832 S.W.2d 39, 41 (Tex. 1992). In a factual insufficiency review, we
will set aside the verdict only if it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex.
1986). 
          Article 5.57 provides the following:
The Board shall prescribe a uniform policy for workmen’s compensation
insurance and no company or association shall thereafter use any other
form in writing workmen’s compensation insurance in this State,
provided that any company or association may use any form of
endorsement appropriate to its plan of operation, if such endorsement
shall be first submitted to and approved by the Board, and any contract
or agreement not written into the application and policy shall be void
and of no effect and in violation of the provisions of this sub-chapter,
and shall be sufficient cause for revocation of license to write
workmen’s compensation insurance within this State. 

Tex. Ins. Code Ann. art. 5.57 (Vernon 1981). Appellant does not argue that it did
not have notice of the terms of the premium payment plan, or that the plan does not
comply with the State Board of Insurance; rather, appellant is arguing that because
the premium payment plan in the policy was not identified as a retrospective plan in
the application, the agreement to pay premiums is null and void under article 5.57. 
          In construing the meaning of the article, we must ascertain and give effect to
the legislature’s intent. Fleming Foods v. Rylander, 6 S.W.3d 278, 284 (Tex. 1999). 
The intent of the legislature should be determined by reading the language of the
provision, and construing the statute in its entirety. See In re Bay Area Citizens
Against Lawsuit Abuse, 982 S.W.2d 371, 380 (Tex. 1998). If there are two
reasonable interpretations of a statute and one would lead to an absurd result and the
other would not, then we must choose the reasonable interpretation that avoids an
absurd result. C & H Nationwide, Inc. v. Thompson, 903 S.W.2d 315, 322 n.5 (Tex.
1994). 
          The purpose of article 5.57 is to keep the amount of premiums to be paid from
the field of bargaining. Associated Emp. Lloyds v. Dillingham, 262 S.W.2d 544, 546
(Tex. Civ. App.—Fort Worth 1953, writ ref’d). Side agreements that do not comply
with the regulations of the State Board of Insurance are invalid and ineffective. See
Brookshire Grocery Co. v. Bomer, 959 S.W.2d 673, 676 (Tex. App.—Austin 1997,
pet. denied). 
          In this case, the applications for insurance provided a breakdown of the
classification of employees, the estimated premiums that would result, and the
estimated annual amount of premiums that would be paid. The more detailed
retrospective premium payment plans were detailed in the policies, and there is no
dispute that the premium payment plans comply with the regulations of the State
Board of Insurance. Appellant directs us to no authority to suggest that every term
of a premium payment plan must be included in the application for insurance, and, 
after considering article 5.57 as a whole, as well as the purpose of the article, we
believe that an interpretation of the article that would require every term and detail
of the premium payment plan to be included in the application of insurance would
lead to an absurd result. 
          Further, the purpose of the article, which is to prevent unauthorized side
agreements, is not thwarted here, where the retrospective premium payment plans that
were approved by the Texas State Board of Insurance were included in the insurance
polices. Accordingly, because the details of the retrospective premium payment plans
in this case were included in the policy, we are unwilling to hold, on these facts, that
the premium payment plans were “side agreements” in violation of article 5.57. 
          We overrule issue three.
 
Notice of Election
          In its fourth issue, appellant argues that the insurance policies that it purchased
were void and unenforceable because there was no evidence, or alternatively,
insufficient evidence, that appellees filed a notice of election as required by the Texas
Retrospective Ratings Plan Manual. 
          The Texas Retrospective Ratings Plan Manual, and the notice of election form,
provide that the retrospective rating plan is not available unless the Texas State Board
of Insurance receives the completed form within sixty (60) days after the plan
becomes effective in Texas. Texas Retrospective Plan Manual, Part Three, (I)(B)(1)
(effective November 1, 1988). 
          Highlands issued the first of the three insurance policies at issue in this case. 
As part of policy one, which was to be in effect for one year, appellant signed and
agreed to the retrospective premium endorsement, which was labeled as a “three year
plan.” Highlands timely filed a notice of election with the State Board of Insurance
and indicated on the notice of election form that the retrospective rating plan was for
a term of three years. Highlands also indicated that the retrospective rating plan
would apply to policy one, but there was no reference to any other policies. The
subsequent two policies that were issued by Aberdeen stated that, “the premium for
this policy will be determined by the retrospective premium endorsement forming a
part of [policy one],” and also identified the applicable year of the three-year
premium payment plan of which the policy was part.
          Appellant cites Brookshire v. Bomer for the proposition that, because the notice
of election in this case was not filed after each of the three policies were issued, the
appellees did not make proper election filings, and, thus, policies two and three are
void and unenforceable. 959 S.W.2d at 675. We are not persuaded by appellant’s
argument. In Brookshire, the parties made a side agreement to amend the original
retroactive premium endorsement plan. Id. The court held that it was undisputed that
the required filings reflecting the changes to the premium factors in the side
agreement were not made pursuant to the rules and regulations of the State Board of
Insurance, and that the side agreement was illegal and void. Id. at 677-78. In this
case, there was no side agreement between appellant and appellees. The notice of
election form filed by Highlands, on its face, contemplated that the retrospective
premium payment plan would cover appellant’s worker’s compensation insurance for
a term of three years. The description of the retrospective premium payment plan in
policy one indicated that the plan would be for a term of three years. The subsequent
two polices that were issued referred to, and incorporated, the three year retrospective
premium payment plan. Accordingly, because there was no side agreement in this
case, the holding of Brookshire does not apply.
          Our review of the evidence indicates that the notice of election form, as well
as all three insurance policies, showed that the retrospective premium payment plan
would be in effect for three years. Accordingly, we hold that there was some
evidence that the trial court could have relied upon to determine that appellees were
in satisfactory compliance with the Texas Retrospective Ratings Plan Manual in its
filing of the notice of election. We further hold that, based upon the same evidence,
the trial court’s judgment was not so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. 
          We overrule issue four.
Breach of Fiduciary DutyIn its fifth issue, appellant argues that the trial court erred in granting appellees’
motion for judgment on the pleadings with regard to appellant’s breach of fiduciary
duty claim. The trial court had previously granted appellees’ special exception to
appellant’s breach of fiduciary duty claim, but permitted appellant to amend its
petition in response to appellees’ special exception. In appellant’s third and last
original petition, appellant alleged that a fiduciary relationship existed between
appellant and appellees because their relationship was one of trust and confidence. 
Appellant alleges that it trusted in and relied on appellees to correctly administer its
worker’s compensation claims, but that appellees betrayed that trust. 
          Summary judgment on the pleadings is proper where plaintiff’s allegations
cannot constitute a cause of action as a matter of law. See Peek v. Equip. Serv. Co.,
779 S.W.2d 802, 805 (Tex. 1989); Maranatha Temple v. Enterprise Prod., 893
S.W.2d 92, 98 (Tex. App.—Houston 1994, writ denied). Accordingly, we will review
the pleadings to determine if appellant alleged facts to support a cause of action for
breach of fiduciary duty. 
          A fiduciary duty is an extraordinary duty that is not lightly created. Garrison
Contractors, Inc. v. Liberty Mut. Ins. Co., 927 S.W.2d 296, 301 (Tex. App.—El Paso
1996, aff’d on other grounds, 966 S.W.2d 482 (Tex. 1998); Gillum v. Republic
Health Corp., 778 S.W.2d 558, 567 (Tex. App.—Dallas 1989, no writ). Fiduciary
relationships can be created by formal, or technical relationships, such as attorney-client relationships, or from informal relationships where the existence of confidence
and trust imposes greater duties as a matter of law. Garrison, 927 S.W.2d at 301;
Lovell v. Western Nat. Life Ins. Co., 754 S.W.2d 298, 303 (Tex. App.—Amarillo
1988, writ denied). Proving the existence of a fiduciary relationship requires more
than just evidence of prior dealings between the parties, and subjective trust by one
party in another does not establish the requisite confidential relationship. Caserotti
v. State Farm Ins. Co., 791 S.W.2d 561, 565 (Tex. App.—Dallas 1990, writ denied). 
There is no general fiduciary duty between an insurer and its insured. Garrison, 927
S.W.2d at 301; Caserotti, 791 S.W.2d at 565. To impose an informal fiducuiary
relationship in a business transaction, the requisite special relationship of trust and
confidence must exist prior to, and apart from, the agreement made the basis of the
suit. R.R. Street & Co., Inc. v. Pilgrim Enter., Inc., 81 S.W.3d 276, 305 (Tex.
App.—Houston [1st Dist.] 2001, no pet.). Appellant has not directed us to, and we
are not aware of any Texas case that has found a fiduciary relationship between an
insured and its insurer. 
          It is undisputed that appellant and appellees are businesses, and that their
relationship was based on appellant’s purchase of worker’s compensation insurance. 
Appellant alleged that a relationship of trust existed between appellant and appellees,
stating that appellant trusted appellees to correctly administer its worker’s
compensation claims, and that appellees were trusted to perform various services
commonly performed by insurers, but it has not alleged facts, even after being
allowed time to re-plead, that demonstrate that an informal, confidential relationship
existed between the parties that was formed prior to and apart from the insurance
contracts. See R.R. Street & Co., 81 S.W.3d at 305. Accordingly, we hold that, under
these facts, the trial court did not err in granting appellees’ motion for judgment on
the pleadings as to appellant’s claim of breach of fiduciary duty.
          We overrule issue five. 
Negligence
          In its sixth issue, appellant argues that the trial court erred in granting
appellees’ special exception as to appellant’s claim for negligent mishandling and
settlement of claims. The trial court granted appellees’ special exception to
appellant’s negligence claim, and it later struck the negligence claim when it
determined that appellant’s negligence claim in its third original petition was not
different than the previous ones. Appellees contend that no such cause of action
exists in Texas.
          We will review the trial court’s ruling on a special exception for an abuse of
discretion. Muecke v. Hallstead, 25 S.W.3d 221, 224 (Tex. App.—San Antonio 2000,
no pet.). The propriety of the dismissal will be judged on the pleadings, not on
evidence. Holt v. Reproductive Servs. Inc., 946 S.W.2d 602, 604 (Tex. App.—Corpus
Christi 1997, writ denied). If the plaintiff’s suit is not permitted by law, the defendant
may file special exceptions and a motion to dismiss. See e.g. Trevinio v. Ortega, 969
S.W.2d 950, 951 (Tex. 1998); Friesenhahn v. Ryan, 960 S.W.2d 656, 658 (Tex.
1998). 
          Appellant is not alleging in this case a traditional Stowers claim in that
appellees negligently failed to settle a claim where there was an offer of settlement
within policy limits. See G.A. Stowers Furniture Co. v. Am. Indem. Co., 15 S.W.2d
544 (Tex. Comm’n App. 1929, holding approved). Rather, appellant is arguing that
appellees negligently settled and paid invalid worker’s compensation claims that had
been asserted against appellant. Appellant contends that, because appellees would
be reimbursed by appellant pursuant to the retrospective premium payment plan,
appellees had less of an incentive to dispute invalid claims that were asserted, and
were, in fact, negligent in settling several of the claims asserted against appellant.
          Appellant cites Ranger County v. Mut. Ins. Co. v. Guin for the proposition that
the Texas Supreme Court has expanded the duty stated in Stowers to cover
appellant’s claim for negligent handling of claims. 723 S.W.2d 656, 659 (Tex. 1987). 
The court in Ranger stated that an insurer’s duty to the insured “extends to the full
range of the agency relationship,” and includes the investigation and the preparation
of the defense of the lawsuit. Id. Since the Ranger decision, however, the Texas
Supreme Court has limited the broad language used in Ranger. In American
Physicians Ins. Exch. v. Garcia, the court referred to the Ranger court’s language
about the duty of an insurer as “dictum.” 876 S.W.2d 842, 849 (Tex. 1994). The
court also noted that, in the context of a Stowers lawsuit, with regard to an insurer’s
duties discussed in Ranger, “evidence concerning claims investigation, trial defense,
and conduct during settlement negotiations is necessarily subsidiary to the ultimate
issue of whether the claimant’s demand was reasonable under the circumstances, such
that an ordinarily prudent insurer would accept it.” Id. Further, unlike the case in
Ranger, there is no allegation in this case that there was negligence in failure to settle
within policy limits. Rather, appellant’s claim is that appellees’ negligence was in
going forward with the settlement of claims.
          We are not aware of any authority from the Texas Supreme Court that
expressly permits plaintiffs to sue insurers, outside of the scope of Stowers, for the
negligent handling of claims. In Maryland Ins. Co. v. Head Indus. Coatings and
Serv., Inc. the Texas Supreme Court, when asked to recognize a duty of good faith
and fair dealing between the insurance carrier and the insured, stated that “Texas law
recognizes only one tort duty in this context, that being the duty stated in Stowers .
. . .” 938 S.W.2d 27, 28 (Tex. 1996). A recent Fifth Circuit decision has also noted
that, with regard to third-party insurance claims, Stowers provides the only common
law tort duty in Texas in that setting. Ford v. Cimarron Ins. Co., 230 F.3d 828, 832
(5th Cir. 2000). We are unwilling to expand the scope of an insurer’s duties to the
insured without express language from the Texas Supreme Court authorizing us to do
so. Accordingly, we hold that the trial court did not err in granting appellees’ special
exception to appellant’s claim for negligent handling of claims.
          We overrule issue six.
Conclusion
          We affirm the trial court’s judgment. 
          
                                                             Sherry Radack
                                                             Chief Justice

Panel consists of Chief Justice Radack and Justices Nuchia and Hanks.