**Claude E. KERR et al., Appellants,**

v.

**L. M. TAYLOR et al., Appellees.**

No. 13383.

Court of Civil Appeals of Texas.

San Antonio.

Oct. 15, 1958.

Rehearing Denied Nov. 12, 1958.

Greenwood & Russell, Harlingen, for appellants.

Moore & Moore, La Feria, for appellees.

BARROW, Justice.

This suit was by appellees, L. M. Taylor and Martin U. Blancett, as landlords, against appellants, Claude E. Kerr and Robert R. Kerr, as tenants, for rentals alleged to be due under their lease agree-

ments. The lease agreements were separate and were entered into on September 1, 1953. Appellants' agreement with appellee L. M. Taylor was evidenced by a memorandum in writing, and their agreement with appellee Martin U. Blancett was oral. No distinction is made between the two agreements, however, since the parties, through their attorneys, agreed at the trial that said agreements were exactly the same. Said rental agreements were for a period of twelve months and provided that the terms of payment to the landowners would be twenty-five per cent of the gross crop earnings on their land. The type of crops farmed were to be determined by the renter, and all labor, equipment and materials required to farm the land were to be furnished by the renters.

In accordance with said lease agreements, appellants entered upon the premises and farmed the same, and during the term of said lease raised cotton, beans and corn. No dispute arose over the cotton.

About the time the lease agreements were entered into, appellants entered into an agreement with Christensen Products Corp., a canner, whereby they agreed to grow a bean crop on said leased premises for the cannery, and the cannery agreed to pay appellants $50 per ton for said beans in the field. Their agreement further provided that the cannery would pay $40 per ton for harvesting and hauling said beans. In accordance with said agreement, appellants planted the beans and planted corn for the beans to climb on. Appellants sold the corn in the field and received $20 per ton therefor, and paid to appellees one-fourth of said $20 per ton received for the corn. In accordance with appellants' agreement with the canner, they sold the beans in the field to Christensen Products Corp., and received therefor the sum of $50 per ton. Appellants paid to appellees one-fourth of said $50 per ton received for the beans. Appellants did not harvest the beans, they were harvested by the canner who paid the harvester $40 per ton for harvesting and hauling the same.

No dispute arose over the corn and appellees accepted one-fourth of the $20 per ton received for the corn in the field as full payment of the rental due under the lease agreements.

Appellees' suit is for the one-fourth of the $40 per ton paid by the cannery as cost of harvesting and transporting the beans to the cannery. Appellants in answer alleged that the terms of the agreements providing that "the terms of payment to the landowner to be 25% of gross crop earnings on said land * * * all labor, equipment and materials required to farm the land will be furnished by renters," were ambiguous and indefinite and that the custom in the community was to pay, as rent, one-fourth of the amount received for the beans in the field when beans were grown for the cannery.

The case was tried before a jury and submitted upon four special issues:

No. 1. "Do you find from a preponderance of the evidence that the Defendants, Claude E. Kerr and Robert R. Kerr, contracted with L. M. Taylor to pay L. M. Taylor twenty-five per cent (25%) of the gross crop earnings on his land?"

No. 2 was a similar issue with reference to the land of plaintiff M. U. Blancett.

No. 3. "Do you find from a preponderance of the evidence that it was the custom and usage in and around the community of La Feria during the fall of 1953, when green beans were grown on rented land for a cannery, for the farmer to sell said beans in the field?"

No. 4. "Do you find from a preponderance of the evidence that it was the custom and usage in and around the community of La Feria, in the fall of 1953, when green beans grown for canneries on rented land and sold in the field, that the money received for said beans in the field was considered the gross earnings from the beans from said land?"

**592**

All of said special issues were answered in the affirmative.

The matters inquired about in the first two issues were undisputed and should not have been submitted to the jury. The last two issues were raised by the pleadings, and it is not disputed that they were also raised by the evidence. No exceptions were made to the pleadings and no objection was made to the submission of these issues to the jury.

The trial court disregarded the jury's answers to Special Issues Nos. 3 and 4, and rendered judgment for appellees. It affirmatively appears from the record before us that the court disregarded these findings of the jury, for the reason that it considered that the contracts were not ambiguous and required the tenants to pay rent not only only on what they received, but to pay rent on what the purchaser paid to others to harvest and transport the beans to the cannery. In this view we think the court erred.

The two provisions of the contract above referred to are patently ambiguous. The expression "to farm the land," as used in the contract, is not so plain and certain that one can definitely say that it includes or does not include harvesting and transporting the crops to market. It is generally known that different crops require different processing for market. Some crops require more expense in harvesting than others. Some crops are grown for local markets and some for distant markets, and some crops are grown for grazing purposes and are harvested in that manner. The provision that the rent should be paid on a percentage of the "gross crop earnings on said land" is not so plain and certain that from the face of the contract it can be said that the tenant who sells his crop in the field is required to pay rent on the amount the purchaser pays other persons to gather and transport the produce to market.

A valid usage or custom concerning the subject matter of a contract, knowledge of which is imputed to the parties, is, according to the general rule, incorporated into the contract by implication. 42 Tex. Jur., 842, § 14, and cases cited. And evidence of the usage is admissible, not to vary or contradict the terms of the contract, but to aid in interpreting it and to ascertain with greater certainty what was intended. 42 Tex.Jur. 843, § 14, and cases cited. It follows, from what has been said above, that if the language of a contract is ambiguous, uncertain, incomplete or inconsistent, evidence is admissible to show the meaning intended by the parties. 42 Tex.Jur., 844, § 15, and cases cited.

It is apparent that the court should not have disregarded the specific findings of the jury. These findings are material, ultimate and controlling. Under the jury's verdict as a whole, the appellants were entitled to judgment.

Accordingly, the judgment of the trial court is reversed and judgment here rendered that appellees take nothing.