**LYNX EXPLORATION AND PRODUCTION COMPANY, INC., Appellant,**

v.

**4–SIGHT OPERATING COMPANY, INC., Appellee.**

No. 06–94–00026–CV.

Court of Appeals of Texas, Texarkana.

Jan. 19, 1995.

Timothy G. Moore, G. Thomas Allison, III, Merriman, Patterson & Allison, Longview, Hubert A. Crouch III, Patrick O. Strauss, Crouch & Hallett, LLP, Dallas, for Lynx Exploration and Production, Inc.

Melvin Wilcox III, Mark D. Strachan, Smead, Anderson, Wilcox & Dunn, Longview, for 4–Sight Operating Co., Inc.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

Lynx Exploration appeals from a summary judgment in favor of 4–Sight. Lynx raises seven points of error in which it contends that the trial court erred by denying Lynx's motion for summary judgment, by granting 4–Sight's motion for summary judgment, and by failing to award attorney's fees to Lynx.

Lynx attempted to purchase oil and gas properties from 4–Sight for about $5,000,000. Lynx contends that a binding agreement was reached and that 4–Sight breached that agreement by refusing to transfer the property as agreed. Lynx sought specific performance. The trial court denied Lynx's motion and granted judgment in favor of 4–Sight.

This case revolves around a single document: a three-page letter sent by Lynx to 4–Sight on December 9, 1992. In that letter, Lynx raised its monetary offer to a level requested in previous negotiations by 4–Sight. Lynx contends that the letter is a contract. 4–Sight contends that it is not an enforceable agreement because too many terms are left for later negotiation. Lynx brought suit requesting an order of specific performance or alternatively seeking damages for breach of contract.

■ Summary judgment is singularly appropriate when a written instrument is worded such that it can be given a definite legal interpretation. Such an instrument should be construed by the court as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). In pursuing an action for specific performance, the first question is whether there is an enforceable contract to be performed. *Guzman v. Acuna*, 653 S.W.2d 315, 318 (Tex.App.—San Antonio 1983, writ dism'd).

The two issues which we must address are (1) whether there was a mutual reciprocal obligation sufficient to constitute a binding contract and (2) whether the document is sufficient to fix the legal obligations and liabilities of the parties.

## Mutual Reciprocal Obligation

■ Lynx correctly contends that the letter agreement sets forth a number of items that are subject to its approval. This can be done in a satisfaction contract. The Texas Supreme Court adopted a reasonableness test for a "satisfaction" provision of contract in deciding whether a party acted in good faith. This is an objective standard which does not seek to find the mental state of satisfaction of that party, but rather whether the performance would satisfy a reasonable person. *Black Lake Pipe Line Co. v.*

*Union Construction Co.*, 538 S.W.2d 80 (Tex. 1976); *Cranetex, Inc. v. Precision Crane & Rigging*, 760 S.W.2d 298 (Tex.App.–Texarkana 1988, writ denied). The problem with the acceptance in the present case is that the letter gives Lynx an absolute right not to execute the contemplated purchase and sale agreement in the following language:

> In the event Lynx E & P does not execute a Purchase and Sale Agreement by February 1, 1993, the Letter Agreement will expire and neither party will have any obligation to the other thereafter.

■ When a party is given an absolute right not to be bound by the terms of the contract, this is not the type of satisfaction provision to which a court can apply an objective standard.

Other acceptance requirements included in the letter were as follows:

> This offer is subject to Lynx E & P having the option of obtaining confirmation of it's (sic) engineering and reserve studies by a third party engineer and the results of that evaluation being acceptable to Lynx E & P's partners. This option will expire with the complete execution of Purchase and Sale Agreement.

> This offer is subject to Lynx E & P's acceptance of the status of joint interest billings, suspended revenue and other accounting matters relating to the Properties.

The letter was not a binding contract enforceable by both parties. Lynx was given the option of not executing a purchase and sale agreement, and if Lynx chose not to do so, the agreement was to expire with neither party having any obligation to the other. In other words, Lynx would have total discretion to avoid the sale. Under the terms of this contract, Lynx could tie up the property until February 1, 1993, and then not execute a purchase and sale agreement. This is what the court referred to in the *Baldwin v. New*, 736 S.W.2d 148 (Tex.App.—Dallas 1987, writ denied), as a "free look" contract. Thus, this instrument did not amount to a binding contract, but was rather in the nature of an option without consideration. Because there was no consideration for the purchase option,

see *Culbertson v. Brodsky,* 788 S.W.2d 156, 157 (Tex.App.—Fort Worth 1990, writ denied), and there was no mutuality, this letter agreement was not subject to specific performance enforcement and did not bind either party.

## Sufficiency of Terms

■ If an alleged agreement is so indefinite as to make it impossible for a court to fix the legal obligations and liabilities of the parties, it cannot constitute an enforceable contract. *University National Bank v. Ernst & Whinney,* 773 S.W.2d 707, 710 (Tex. App.—San Antonio 1989, no writ). Absent an enforceable contract, there can be no breach. *Shandee Corp. v. Kemper Group,* 880 S.W.2d 409 (Tex.App.—Houston [14th Dist.] 1994, writ denied).

■ The document contains an offer and acceptance. The question to be answered is whether the offer and acceptance constitute a contract or whether there are material provisions left to be agreed to later. The instrument states that, even if signed by 4–Sight, the offer is subject to Lynx's approval and acceptance of "Assignment, Purchase and Sale Agreement and other instruments associated with the purchase contemplated by this offer.... *The Purchase Agreements will address, but not be limited to, the following items.*" (Emphasis added.) The listed items are as follows:

1. Performance deposit ($150,000.00 to be delivered to mutually agreeable escrow agent upon complete execution of Purchase and Sale Agreement),

2. Title, including acceptance of form and terms of existing contractual agreements relating to the properties,

3. Liabilities and responsibilities associated with or arising from ownership and/or operations prior to closing date,

4. Environmental conditions,

5. Designation of successor operator,

6. Over/under-produced gas wells,

7. Inspection of the properties and verification of price, quality and quantity of production,

8. Accounting matters.

Lynx contends that it would have been better off having signed an enforceable agreement on a napkin containing only the essential terms of price and property. We agree. There is no requirement as to the quality of paper upon which an agreement is written and a court would have no trouble enforcing an agreement which involved only the essential terms of price and property. Lynx cites the case of *Street v. Johnson* for the proposition that the essential elements in writing for the sale of real property are the price, the property description, and the seller's signature. 96 S.W.2d 427, 429 (Tex.Civ. App.–Amarillo 1936, no writ). The court in the *Street* case was making a determination as to the application of the statute of frauds. The court found that these elements were sufficient to satisfy the statute of frauds. This does not mean that the contract in the *Street* case would have remained enforceable if additional terms had been incorporated into the agreement which were so indefinite as to be impossible for the court to fix the legal obligation and liabilities of the parties.

■ Of course, Lynx could have waived these conditions and purchased the property. Inasmuch as all of the conditions were for its benefit, it could have chosen to ask for specific performance. *See Smith v. Nash,* 571 S.W.2d 372 (Tex.Civ.App.–Texarkana 1978, no writ). A contract which is unconditional as to one party but conditional as to the other party is valid and enforceable upon either the occurrence or the waiver of the condition. Here we have had neither.

■ Terms may be implied in a written agreement, provided they are implied by the language used by the parties. There are Texas cases in which the price to be paid was supplied by the court on the basis of what a reasonable price would be. *Ford Motor Company v. Davis Bros. Inc.,* 369 S.W.2d 664 (Tex.Civ.App.—Eastland 1963, no writ). The court may also imply what a reasonable time for performance will be. *Berne v. Keith,* 361 S.W.2d 592 (Tex.Civ.App.–Houston [1st Dist.] 1962, writ ref'd n.r.e.). Implied provisions in contracts, however, are not favored by the law. *Achterberg v. Gillett,* 322 S.W.2d 306 (Tex.Civ.App.—El Paso), *writ ref'd n.r.e. per curiam,* 159 Tex. 591, 325 S.W.2d 384 (1959).

In the present case, it would be impossible for a court to infer what the parties meant by stating only that the purchase agreements to be prepared will address such matters as "environmental conditions," "over/under-produced gas wells," "accounting matters," liabilities and responsibilities associated with or arising from ownership and/or operations prior to closing date. A valid usage or custom concerning the subject matter of a contract may be imputed to the parties and incorporated into the contract by implication. *Kerr v. Taylor*, 317 S.W.2d 589 (Tex.Civ.App.—San Antonio 1958, writ dism'd). Lynx presented summary judgment proof in the form of an affidavit that the supplemental terms were consistent with the standards of the oil and gas industry at the time and place in question, but it never offered any summary judgment proof showing a usage of the terms in the oil industry that would make the terms specific enough for the court to enforce.

In order for the court to enforce this agreement as a contract, it would have to provide an agreement for the parties in the areas left to be resolved by the letter. The court would also need to, according to Lynx, adjust the price downward if title to the various properties was not to Lynx's liking. The Supreme Court has made it clear that if an "agreement is so indefinite as to make it impossible for a court to fix the legal liability of the parties thereto, it cannot constitute an enforceable contract." *Moore v. Dilworth*, 142 Tex. 538, 179 S.W.2d 940, 942 (Tex.1944). [In *Moore* the time for performance was not stated.] Thus,

> [i]n order to be legally binding, a contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook. *Bendalin v. Delgado*, 406 S.W.2d 897, 899 (Tex.1966); *University Nat'l Bank v. Ernst & Whinney*, 773 S.W.2d 707, 710 (Tex.App.–San Antonio 1989, no writ). The material terms of the contract must be agreed upon before a court can enforce a contract. Where an essential term is open for future negotiation, there is no binding contract. *Gerdes v. Mustang Exploration Co.*, 666 S.W.2d 640, 644 (Tex.App.–Corpus Christi 1984, no writ). [In *Gerdes*, a price for a collateral matter was not set out, and negotiations were to be held to arrive at an amount due.]

*T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex.1992). (In *Stanley*, a loan agreement was at issue. No evidence of interest rates or repayment terms was presented.)

Lynx does not want the document presently before this Court to be enforced. Rather, it wants this Court to enforce this document along with a "reasonable" purchase agreement that would address each of the concerns set out by the offer and to adjust the price accordingly. Some terms will be implied in contract analysis. *Id.; see* 14 TEX.JUR.3d *Contracts* §§ 220–223 (1981); 67 TEX.JUR.3d *Specific Performance* §§ 16–24 (1989). Where, however, material terms of the contract were not agreed to, but were left for future adjustment, as in this case, enforcement cannot be granted. *Condovest Corp. v. John Street Builders, Inc.*, 662 S.W.2d 138 (Tex.App.–Austin 1983, no writ); *Elliott v. Brooks*, 184 S.W.2d 929, 935 (Tex.Civ.App.–Eastland 1944, no writ).

The trial court correctly analyzed the document in this case as a matter of law. The judgment of the trial court is affirmed.