Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio



## MEMORANDUM OPINION

No. 04-08-00745-CV

Edward R. **POLLARD** and Sharon Pollard,
Appellants

v.

Stephen P. **FINE** and Athena Fine,
Appellees

From the 216th Judicial District Court, Kerr County, Texas
Trial Court No. 06-182-A
Honorable Stephen B. Ables, Judge Presiding

Opinion by:  Sandee Bryan Marion, Justice

Sitting:  Sandee Bryan Marion, Justice
Rebecca Simmons, Justice
Marialyn Barnard, Justice

Delivered and Filed: September 9, 2009

REVERSED AND REMANDED

This is an appeal from the trial court's order granting the motions for summary judgment

filed by appellees. We conclude appellees were not entitled to summary judgment; therefore, we

reverse the trial court's final judgment and remand the cause.

**BACKGROUND**

Appellees, Stephen and Athena Fine, owned a tract of commercial real estate, and, during the course of their divorce proceedings, the property was listed for sale. At the time of the listing, the property was leased by Ferguson Enterprises, Inc. The listing stated the sale of the property was subject to an existing lease "which expires on January 31, 2007. Present tenant does desire to extend lease agreement." Edward Pollard saw the listing and, effective January 3, 2006, Stephen Fine, as seller, and appellants, Edward and Sharon Pollard as buyers, executed a "Commercial Contract - Improved Property," under which the Pollards paid $10,000 in earnest money to the title company. The contract provided for a forty-five-day "feasibility period" during which the Pollards could terminate the contract for any reason.

On January 11, 2006, during the "feasibility period," the Fines and Ferguson Enterprises executed a lease amendment, which gave Ferguson Enterprises an option to extend the lease for up to an additional fourteen years. The lease amendment also abated Ferguson Enterprises's rent for six months in exchange for Ferguson Enterprises performing certain improvements to the property. On January 24, 2006, the Fines provided the Pollards' real estate agent with a copy of the lease amendment.

On March 24, 2006, the Pollards appeared at the closing; however, they wanted to buy the property only if it was not subject to the amended lease with Ferguson Enterprises. The Pollards filed suit against the Fines on that same date. Apparently, in anticipation of problems over the lease amendment, Mr. Pollard had prepared a petition to file suit prior to attending the closing. In their third amended petition, the Pollards alleged the Fines breached the Commercial Contract because

they "were unable to transfer the property as it existed on January 3, 2006, . . . in that the [Fines] had further encumbered the property with a new lease . . . ." The Pollards also asserted claims for common law and statutory fraud. The Pollards sought specific performance of the contract, money damages, and declaratory relief. Stephen and Athena each counter-claimed for declaratory relief and attorney's fees.

All parties moved for summary judgment. On September 10, 2007, the parties entered into a stipulation under which the Pollards dismissed "all fraud claims, whether common law, statutory, or otherwise . . . ." On October 25, 2007, the trial court granted the motions filed separately by Stephen and Athena, who by that time were divorced; denied the Pollards' motion; and entered final judgment in favor of the Fines. On appeal, the Pollards do not challenge the trial court's denial of their motion for summary judgment; however, they assert the trial court erred in granting the Fines' motions.[1]

## ATHENA'S NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT

Athena moved for summary judgment on the Pollards' breach of contract claim on the ground that there was no evidence she was a party to any contract with the Pollards.

There is no dispute Athena did not sign the Commercial Contract. However, there is also no dispute she owned the property with her soon-to-be former husband, Stephen, and she knew the property was to be sold. The Pollards responded that because Stephen acted as agent for Athena in

---

[1] Because the Pollards dismissed their fraud claims before the trial court rendered summary judgment in favor of the Fines, we do not consider whether summary judgment on these claims was proper.

the sale of the property, she was bound by the terms of the contract and, therefore, not entitled to summary judgment on their breach of contract claim.

We review a no-evidence summary judgment de novo by construing the record in the light most favorable to the non-movant and disregarding all contrary evidence and inferences. *Reynosa v. Huff*, 21 S.W.3d 510, 512 (Tex. App.—San Antonio 2000, no pet.). A party may move for a no-evidence summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. TEX. R. CIV. P. 166a(i). A no-evidence summary judgment motion is improperly granted when the non-movant brings forth more than a scintilla of probative evidence that raises a genuine issue of material fact. *Id.*; *Gomez v. Tri City Cmty. Hosp., Ltd.*, 4 S.W.3d 281, 283 (Tex. App.—San Antonio 1999, no pet.). More than a scintilla of evidence exists if the evidence would allow reasonable and fair-minded people to differ in their conclusions. *Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003). Less than a scintilla of evidence exists if the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact. *Id.*

"The relationship of principal and agent does not arise from the mere fact of the marital relationship, nor does that fact raise a presumption of such a relationship." *Taylor v. Gilbert Gertner Enters.*, 466 S.W.2d 337, 339 (Tex. App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.); TEX. FAM. CODE ANN. § 3.201(c) (Vernon 2006) ("A spouse does not act as an agent for the other spouse solely because of the marriage relationship."). However, "[a] person is personally liable for the acts of the person's spouse only if . . . the spouse acts as an agent for the person . . . ." TEX. FAM. CODE

-4-

ANN. § 3.201(a). Thus, facts and circumstances might be produced that would require a finding that the wife is bound by the agreement of her husband. *Taylor*, 466 S.W.2d at 339. Only if the facts are uncontroverted or otherwise established, may the existence of an agency relationship be considered a pure question of law. *III Forks Real Estate, L.P. v. Cohen*, 228 S.W.3d 810, 815 (Tex. App.—Dallas 2007, no pet.).

Here, the Pollards presented the following evidence on the issue of whether Stephen acted as Athena's agent when he executed the Commercial Contract. The property was considered the community property of both Stephen and Athena. The couple's divorce decree provided the property would remain jointly owned by the Fines until its sale, and Stephen testified in his deposition that Athena signed the listing agreement for the sale. Larry Richter, the Fines' real estate agent, testified in his deposition that both Stephen and Athena signed his listing agreement. Both Stephen and Larry testified Athena was kept informed of the earnest money contract, and she was aware of the sales price and terms and conditions of the contract. The Pollards also established that Athena signed the lease amendment with Ferguson Enterprises, and Stephen testified she was aware of the negotiations that led to the amendment. We conclude the Pollards met their summary judgment burden of bringing forth more than a scintilla of probative evidence that raises a genuine issue of material fact on the question of whether Stephen acted as Athena's agent in the sale of the property. Therefore, the Pollards adduced summary judgment evidence sufficient to defeat Athena's entitlement to a no-evidence summary judgment on the Pollards' breach of contract claim against her.

## STEPHEN'S MOTION FOR SUMMARY JUDGMENT[2]

The dispute between the parties is centered on the issue of whether the Commercial Contract prohibited the Fines from extending the lease with Ferguson Enterprises. Stephen moved for summary judgment on several grounds: (1) the Pollards failed to establish the existence of a contract because there was no meeting of the minds sufficient to form a contract, (2) there was a mutual mistake, and (3) the contract was ambiguous and such ambiguity should be construed against the Pollards.[3] Stephen's arguments all focus on the following language contained in the Commercial Contract:

> 7.E. <u>Contracts Affecting Operations:</u> Until closing, Seller: (1) will operate the Property in the same manner as on the effective date under reasonably prudent business standards; and (2) will not transfer or dispose of any part of the Property, any interest or right in the Property . . . . After the feasibility period ends, Seller may not enter into, amend, or terminate any other contract that affects the operations of the Property without Buyer's written approval.

---

[2] In his motion for summary judgment, Stephen asserted there was no evidence on any element of the Pollards' fraud claims, which we do not address on appeal because the Pollards dismissed their fraud claims before the trial court rendered summary judgment in favor of the Fines. As to the Pollards' breach of contract claim, Stephen did not state the elements on which there was no evidence. *See* Tex. R. Civ. P. 166a(i) (no-evidence motion for summary judgment "must state the elements as to which there is no evidence"); *see also* Tex. R. Civ. P. 166a(i) cmt ("The motion must be specific in challenging the evidentiary support for an element of a claim or defense; paragraph (i) does not authorize conclusory motions or general no-evidence challenges to an opponent's case."). Therefore, we treat Stephen's motion on the Pollards' contract claim as a motion for a traditional summary judgment. *Amouri v. Southwest Toyota, Inc.,* 20 S.W.3d 165, 168 (Tex. App.—Texarkana 2000, pet. denied) (when no-evidence motion for summary judgment does not specifically state which elements lack evidence, the motion should be treated as a motion for a 166a(c) summary judgment).

[3] For the first time on appeal, Stephen contends the Pollards offered no evidence a contract existed. Stephen bases this argument on objections to "form" raised by his attorney during a deposition. This argument is not one of the grounds upon which he moved for summary judgment, and therefore, we do not consider it on appeal.

In his motion for summary judgment, Stephen argued paragraph 7.E allowed him and his wife to extend the lease with Ferguson Enterprises at any time before the forty-five-day feasibility period expired.

Under traditional summary judgment standards, the movant must show there is no genuine issue of material fact and that judgment should be granted as a matter of law. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). A defendant moving for summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). Under this traditional standard, we take as true all evidence favorable to the non-movant and we make all reasonable inferences in the non-movant's favor. *Id.* If the defendant meets this burden, the plaintiff must then raise a genuine issue of material fact on that element. *Gonzalez v. City of Harlingen*, 814 S.W.2d 109, 112 (Tex. App.—Corpus Christi 1991, writ denied).

## A. Meeting of the Minds

Whether the parties have come to a "meeting of the minds" is measured objectively according to what the parties said and did. *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App.—San Antonio 1999, pet. denied). The parties' subjective thoughts and beliefs do not control. *Id.* When the "meeting of the minds" element is contested, it is a question for the fact finder. *Hallmark v. Hand*, 885 S.W.2d 471, 476 (Tex. App.—El Paso 1994, writ denied). "Meeting of the minds" describes the mutual understanding and assent to the agreement regarding the subject matter and the

essential terms of the contract. *Weynand v. Weynand*, 990 S.W.2d 843, 846 (Tex. App.—Dallas 1999, pet. denied). "The parties must agree to the same thing, in the same sense, at the same time." *Id.* The essential elements required, in writing, for the sale of real property are the price, the property description, and the seller's signature. *See Rus-Ann Dev., Inc. v. ECGC, Inc.*, 222 S.W.3d 921, 927 (Tex. App.—Tyler 2007, no pet.); *Lynx Exploration & Prod. Co. v. 4-Sight Operating Co.*, 891 S.W.2d 785, 788 (Tex. App.—Texarkana 1995, writ denied). However, this does not mean that a contract containing these terms would remain enforceable if additional terms are incorporated into the agreement that are so indefinite that the court could not fix the legal obligation and liabilities of the parties. *Lynx Exploration*, 891 S.W.2d at 788.

Here, there is no dispute the Fines agreed to sell and the Pollards agreed to buy the real property that was the subject matter of the Commercial Contract. The parties agreed on all terms essential to that sale, including, but not limited to, the sales price, financing, payment of earnest money, inspection of the property, fees, and details regarding closing and possession of the property. We conclude Stephen did not conclusively establish that there was no meeting of the minds with regard to the contract.

## B.    Mutual Mistake

When parties to an agreement have contracted under a misconception or ignorance of a material fact, the agreement will be avoided under the doctrine of mutual mistake. *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990). To prove a mutual mistake, the evidence must show that both parties were acting under the same misunderstanding of the same material fact when the

agreement was executed. *Seymour v. American Engine & Grinding Co.*, 956 S.W.2d 49, 58 (Tex. App.—Houston [14th Dist.] 1996, writ denied). "The doctrine of mutual mistake must not routinely be available to avoid the results of an unhappy bargain." *Williams v. Glash*, 789 S.W.2d 261, 265 (Tex. 1990).

On appeal, Stephen contends he believed paragraph 7.E allowed him to extend the lease, however, in neither his motion for summary judgment nor on appeal does he point to specific evidence in the summary judgment record supporting any contention he held this belief at the time the Commercial Contract was executed. There is also no evidence of the Pollards' purported misunderstanding of paragraph 7.E at the time the Commercial Contract was executed. We, therefore, conclude there is no evidence in the record that either the Fines or the Pollards did not understand the implications of paragraph 7.E when the Commercial Contract was executed. *See City of The Colony v. North Tx. Mun. Water Dist.*, 272 S.W.3d 699, 736 (Tex. App.—Fort Worth 2008, pet. filed) (although appellant submitted evidence demonstrating its own thoughts about the parties' various responsibilities under the contract, it offered no evidence that appellee also suffered from a mistake of fact regarding any of those responsibilities; therefore, appellant produced no evidence to support the mutual mistake element requiring that both parties be mistaken about a common intention). Therefore, Stephen did not conclusively establish that there existed a mutual mistake.

**C.    Ambiguity**

"Whether a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered."

*Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). Only where a contract is ambiguous may a court consider the parties' interpretation and "admit extraneous evidence to determine the true meaning of the instrument." *Nat'l Union Fire Ins. Co. of Pittsburgh, Penn. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (per curiam). A contract is not ambiguous merely because the parties have conflicting interpretations of the contract. *Columbia Gas*, 940 S.W.2d at 589. A contract is ambiguous only when its meaning is uncertain or it is reasonably susceptible to more than one meaning. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). When a contract is not ambiguous, the construction of the written instrument is a question of law for the court that is reviewed de novo. *MCI Telecommunications Corp. v. Texas Utilities Elec. Co.*, 995 S.W.2d 647, 650-51 (Tex. 1999); *Coker*, 650 S.W.2d at 393.

Under the contract here, the seller agreed to "sell and convey" its "interest in all leases . . . ." Also under the contract, the buyers could terminate the contract "for any reason within 45 days after the effective date (feasibility period) by providing the seller written notice of termination." During the feasibility period, the buyers could inspect, study, and assess the property. Within ten days after the effective date, the seller was obligated to provide the buyers with "a current rent roll of all leases affecting the Property," and "copies of all current leases pertaining to the Property, including any modifications, supplements, or amendments to the leases . . . ." Until the closing date, the seller was allowed to "operate the Property in the same manner as on the effective date under reasonably prudent business standards" but could not "transfer or dispose of any part of the Property" or "any interest in the Property . . . ." After expiration of the feasibility period, the seller had to obtain the

buyer's written consent to amend any contract affecting the Property's operations. Finally, "[e]ach written lease seller is to assign to buyer under this contract must be in full force and effect according to its terms without amendment or modification that is not disclosed to buyer in writing." The seller was also obligated to provide to the buyers with "any modification, amendments, or default by landlord or tenant under the leases" that "exist at the time seller provides the leases to the buyer or subsequently occur before closing."

We conclude the Commercial Contract unambiguously envisions allowing the seller to operate the property "under reasonably prudent business standards" at all times prior to closing, including modifying, supplementing, or amending any existing leases subject only to providing the Pollards with proper notice. We agree with Stephen that the Commercial Contract unambiguously allowed him and his former wife to amend the lease with Ferguson Enterprises prior to expiration of the feasibility period. However, we do not agree Stephen conclusively established his right to summary judgment on the Pollards' breach of contract claim because the issue remains whether such an amendment satisfied "reasonably prudent business standards." The question of whether the extension of the lease for up to fourteen years and a six-month abatement of rent satisfies "reasonably prudent business standards" is a question the fact-finder must determine under all the circumstances present. *See Ridgeline, Inc. v. Crow-Gottesman-Shafer No. 1*, 734 S.W.2d 114, 116 (Tex. App.—Austin 1987, no writ) ("[E]xcept in extraordinary circumstances, inquiry as to reasonable conduct is a question of fact which precludes summary judgment."). Therefore, Stephen

did not conclusively establish his entitlement to summary judgment on the Pollards' breach of contract claim.

## D.     Specific Performance

Stephen also argued that, even if he breached the contract, the Pollards were not entitled to specific performance because (1) they admitted performance of the contract was impossible after the Fines extended the lease with Ferguson Enterprises, (2) damages are an adequate remedy, (3) the Pollards failed to perform when they refused to close the sale, and (4) the Pollards lack clean hands.

A purchaser of real estate is entitled to specific performance of a contract for sale of land when the contract is valid and enforceable, and when the terms of the contract are sufficiently clear so that the parties know their obligations under the contract. *Abraham Inv. Co. v. Payne Ranch, Inc.*, 968 S.W.2d 518, 527 (Tex. App.—Amarillo 1998, pet. denied) (citations omitted). A purchaser of property who seeks specific performance of a real estate contract must prove that he has diligently and timely performed or tendered performance of all obligations set forth in the contract. *See id.* Although the Pollards were prepared to file a lawsuit even before closing, we conclude they presented sufficient summary judgment evidence to defeat Stephen's entitlement to summary judgment as a matter of law. The Pollards appeared at the closing with a cashier's check, but did not complete the closing of the sale of the property when they were informed Stephen would not or could not convey the property without the amended lease. This failure on Stephen's part constituted, in their mind, a breach of the contract. *See Rus-Ann Dev.*, 222 S.W.3d at 927 ("It is thoroughly settled that where a defendant has openly and avowedly refused to perform his part of the contract or

declared his intention not to perform it, the plaintiff need not make tender of payment of the consideration before bringing suit."); *Graves v. Alders*, 132 S.W.3d 12, 17-18 (Tex. App.—Beaumont 2004, pet. denied) (when seller has conspicuously breached the contract, "it is only necessary that the purchaser be ready and willing, and offers to perform within his pleadings."). Therefore, Stephen did not conclusively establish his entitlement to summary judgment on whether the Pollards were entitled to specific performance as a result of any breach of the Commercial Contract.

## CONCLUSION

Because we conclude neither Stephen nor Athena conclusively established their right to summary judgment on the Pollards' breach of contract claim, we reverse the trial court's final judgment in its entirety and remand for further proceedings.

Sandee Bryan Marion, Justice